People *ex rel.* Commissioners of Emigration agt. Supervisors of Richmond.

———◆◆———

SUPREME COURT.

The People *ex rel.* The Commissioners of Emigration agt. The Supervisors of Richmond County.

Where, by the act of 1860, the board of supervisors of Richmond were to issue bonds for the amounts certified to be due to the *commissioners of emigration* and to the *people of the state,* for the damages caused by the destruction of the marine hospital and quarantine buildings, &c. on Staten Island, all of which bonds were delivered by the supervisors to the *treasurer of the state.*

People *ex rel.* Commissioners of Emigration agt. Supervisors of Richmond.

*Held,* that although the commissioners of emigration, by the terms of the act, were entitled to receive the bonds certified to them, yet the supervisors having substantially complied with the act, the direction contained in the statute is not of so absolute and exclusive a nature as to impose an obligation on this court to enforce it by a writ of *mandamus.* (SUTHERLAND, J., *dissenting. This decision affirms that at special term, S. C.* 21 *How.,* 335.)

*New York General Term, January,* 1862.

CLERKE, SUTHERLAND and BARNARD, *Justices.*

APPEAL from an order of special term denying an application by the commissioners of emigration for a mandamus to the board of supervisors of Richmond county.

JOHN E. DEVELIN, *for appellants.*

CHARLES G. MYERS, *for respondents.*

By the court, CLERKE, P. Justice.    By the seventh section of the act of 1860, (*chap.* 465,) the treasurer of the state is authorized to receive bonds to the amount certified in favor of the people ; and the commissioners of emigration, it directs, shall receive the bonds to the extent of the amount certified in their favor.    The bonds which the commissioners of emigration seek by this application to obtain, are for the amount ($107,251.79) which the board of commissioners, appointed by the act of 1860, certified and awarded in direct terms to the commissioners of emigration.    So that it would have been a more exact compliance with the act if the supervisors of Richmond county had given their bonds to the commissioners of emigration, instead of to the treasurer of the state.    Nevertheless, I think they have substantially complied with it ; and to grant this application would be productive of more inconvenience than the rights of the relators, considered in connection with the rights of those who are the real owners of the bonds, require.    The former were the trustees of the property injured—the latter are the beneficial owners of it ; and, although the award was made to the one, yet it cannot be justly said there was any misapplication of the bonds by giving them to the financial agent and legal depository of

the funds of the other. So that, although the commissioners of emigration, by the terms of the act, were entitled to receive those bonds, yet the direction contained in the statute is not of so absolute and exclusive a nature as to impose an obligation on this court to enforce it by a writ of mandamus.

This is indeed declared to be a writ of right by the highest and most venerable authorities, as the counsel of the relators contends, which the court is under an obligation unreservedly to issue when a proper case is presented to it. (*See Mandamus, Bacon's Abridgement, 6th vol. p.* 420, *Phil. ed.* 1856.) It does not rest, as may be inferred from the language of some modern judges, in its mere discretion to grant or to refuse it, as in an application for an additional allowance to the successful party in an action, or for an order of reference; on the other hand, however, a party is not peremptorily entitled to it in the same sense that a plaintiff is entitled to judgment for damages on a breach of contract, when he proves at a trial the breach and the damages. But, as in other cases seeking for a specific remedy, the court will not confine itself to a consideration of the technical right, but will regard the equitable circumstances connected with the application, and the consequences which would result from granting it and if, on the whole, injustice, or even serious public inconvenience and no substantial benefit would follow, the writ would not be issued. It bears some resemblance in this respect to many applications for specific relief in equity; particularly to a bill for a specific performance of a contract. Indeed, there is in many respects a similarity between the legal jurisdiction of the supreme court relative to the writ of mandamus and the equitable jurisdiction relative to bills for a specific performance; although the one should be confined to the enforcement of public, the other to the enforcement of private rights or duties. In both the jurisdiction is regulated by reasons, and a course of decisions and practice,

establishing fixed precedents, which the court is under an obligation to observe. Nothing can be further than this from what is commonly called discretion; and yet the courts, in such cases, have a much wider latitude in adjusting their decisions to the circumstances before them, than in ordinary common law actions. This is what the word discretion imports in those cases; not that plenary discretion founded only on the conscience of the judge, or his abstract notions of justice.

A person, therefore, from whom a right is withheld which can only be enforced by a writ of mandamus, is as positively entitled to that remedy, when he presents a proper case, as any other suitor is entitled to his appropriate remedy. But the court exercises a wider latitude in the one case than in the other, in conforming its decision to the circumstances and facts upon which the application is founded. The decision in the case before us we think correct. The order should be affirmed, with costs.

SUTHERLAND, J., dissented.